A10A0262, A10A0374. FOSTER v. WILMINGTON PLANTATION
OWNERS ASSOCIATION, INC. (two cases).
(696 SE2d 85)

SMITH, Presiding Judge.

We granted William M. Foster's applications for interlocutory appeal in these two related cases in order to consider an issue of first impression: the proper venue of an action to enforce a condominium association lien under the Georgia Condominium Act, OCGA § 44-3-70 et seq. The Act provides that the law governing foreclosure of liens for the improvement of real property applies here. Venue therefore properly lies in the county of the defendant's residence rather than in the county where the property is located, in this case Chatham County, where the actions were brought. Because both defendants in Case No. A10A0262 reside in Twiggs County, the trial court erred in denying Foster's motion for transfer of venue. In Case No. A10A0374, one of the defendants admitted venue in Chatham County in its answer, but the trial court erred in holding that the defendants were joint obligors, and we therefore reverse in that appeal as well.

William Foster, a Twiggs County resident, owned four units in a Savannah condominium known as Wilmington Plantation. In 2006, he sold two units to EKL Georgia, LLC ("EKL"), also a Twiggs County resident. In 2005, he sold two units to Inglesby & Inglesby Real Estate Holdings, LLC ("Inglesby"), which had its principal office and registered agent for service in Fulton County.

In 2008, Wilmington Plantation Owners Association ("Wilmington") brought two actions for unpaid condominium association fees, one against Foster and EKL for the units that EKL now owns, and one against Foster and Inglesby for the units that Inglesby now owns. Wilmington alleged that it believed Foster and EKL to be residents of either Bibb County or Twiggs County, while alleging that Inglesby was a Fulton County resident. In both actions, however, Wilmington alleged that venue was proper in Chatham County as an action for the foreclosure of real property. Both Foster and EKL answered challenging venue, but Inglesby in its answer admitted venue was proper in Chatham County.

Foster answered and in both actions moved to dismiss or transfer for improper venue. The trial court entered separate orders in each action denying Foster's motions.

With respect to the EKL units, the trial court held that a foreclosure action for condominium assessments is an "in rem"

action against the property and is governed by Ga. Const. of 1983, Art. VI, Sec. II, Par. II as a case "respecting title to land." It therefore held that venue was proper in Chatham County, where the condominium property is located. With respect to the Inglesby units, after noting that the action was in rem, the trial court additionally held that, since Inglesby had admitted venue, venue as to Foster was also proper in any event. In so holding, the trial court cited OCGA § 9-10-31 (a), which recites that the Georgia Constitution "permits a trial and entry of judgment against a resident of Georgia in a county other than the county of the defendant's residence only if the Georgia resident defendant is a joint obligor, joint tort-feasor, joint promisor, copartner, or joint trespasser."

Foster applied for interlocutory appeal with respect to both actions, and we granted those applications. These appeals followed.

### Case No. A10A0262

The Georgia Condominium Act provides for the creation and enforcement of liens for "[a]ll sums lawfully assessed by the association against any unit owner or condominium unit." OCGA § 44-3-109 (a). The Code section does not specifically provide for venue of a foreclosure action, but does state that "the lien may be foreclosed by the association by an action, judgment, and foreclosure in the same manner as other liens for the improvement of real property." OCGA § 44-3-109 (c). We therefore look to cases involving the foreclosure of mechanics' and materialmen's liens for the improvement of real property under OCGA § 44-14-360 et seq. *Propes v. Stonington Homeowners Assn.*, 149 Ga. App. 135, 138 (2) (253 SE2d 813) (1979).[1] "[T]he judgment and execution of the lien must be entered by the appropriate superior court. [Cits.]" Id.

While a materialman's claim of lien itself is properly filed in the county where the property is located, OCGA § 44-14-361.1 (a) (2), an action to foreclose the lien must be filed in the county of residence of the defendant. See *American Hosp. Supply Corp. v. Starline Mfg. Corp.*, 171 Ga. App. 790 (320 SE2d 857) (1984)[2] ("venue of the

---

[1] We reject appellee's contention that we should rely on cases involving attorney liens, because such liens are not "for the improvement of real property" as OCGA § 44-3-109 (c) explicitly provides.

[2] While appellant in his brief describes this decision as "physical precedent only," this is inaccurate as the decision was reached by a majority of the whole court as then constituted, six judges concurring fully in the opinion, one concurring in the judgment only, and two dissenting. See former Court of Appeals Rule 35 (b). Compare *Grantham Transfer Co. v. Hawes*, 225 Ga. 436, 439 (2) (169 SE2d 290) (1969) (Court of Appeals decision with three judges concurring fully, two concurring in the judgment only, and four dissenting, "minority opinion" and not binding law). We note that both these cases were decided when the court consisted of nine judges.

foreclosure suit is Fulton County wherein the foreign corporate defendant maintains its registered office"); *Daniel & Daniel, Inc. v. Cosmopolitan Co.*, 137 Ga. App. 383, 384 (1) (224 SE2d 44) (1976) (in lien foreclosure, plaintiff alleged venue in county of corporate owner's principal place of business). This is consistent with the general rule that "a defendant must be sued in the county of his residence." *Ray v. Atkins*, 205 Ga. App. 85, 90 (4) (421 SE2d 317) (1992), citing Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. Moreover, the Code provision for the filing of notice of the foreclosure action in the county where the land is located, OCGA § 44-14-361.1 (a) (3), would be rendered meaningless if venue were also in that county. Venue of these actions accordingly lies in the county of the defendant's residence.

The trial court erred in concluding that the venue provision of Ga. Const. of 1983, Art. VI, Sec. II, Par. II applies to these actions. "Cases respecting title to land" do not include a suit to foreclose a materialman's lien on real estate in the context of Ga. Const. of 1945, Art. VI, Sec. XIV, Par. II, governing the appellate jurisdiction of the Georgia Supreme Court. *Graham v. Tallent*, 235 Ga. 47, 49 (218 SE2d 799) (1975).[3] In that decision, the Supreme Court explicitly noted that "the phrase 'cases respecting titles to land' also appears in the venue provisions of our Constitution," and directed that "[t]hese substantially identical phrases should be interpreted harmoniously unless harmonious interpretation renders either provision unreasonable." (Citations and footnote omitted.) Id. at 49-50. The court went on to hold that a suit seeking to stay a foreclosure proceeding was a personal suit against the defendants which could only be brought in their county of residence and not a case "respecting title to land." Id. at 50-51. This is consistent with the general rule stated in *Owenby v. Stancil*, 190 Ga. 50 (1) (8 SE2d 7) (1940) (headnote by the court):

"Cases respecting title to land" must be brought in the county in which the land (or a part thereof in case of a single tract) lies. The phrase "cases respecting title to land," as used in this context, means actions at law, such as ejectment or statutory substitutes therefor, in which the plaintiff relies on legal title to recover possession of the land or of the land and mesne profits.

---

[3] The current provision governing Supreme Court jurisdiction, Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (1), uses the language "*involving* title to land," (emphasis supplied), but *Graham* was decided under the Ga. Const. of 1945, in which the language of the jurisdictional provision and that of the venue provision were identical. The same is true of the Ga. Const. of 1976: compare Art. VI, Sec. II, Par. IV (jurisdiction) and Art. VI, Sec. XIV, Par. II (venue).

See also *Ray*, supra, 205 Ga. App. at 90-91 (4) (suit seeking to set aside deed not a suit respecting title to land).

Relying on *Vector Co. v. Star Enterprises, Inc.*, 131 Ga. App. 569, 571 (206 SE2d 636) (1974) (physical precedent only), appellee asserts that a foreclosure of a materialman's lien is an "in rem" action and thus venue should lie at the location of the "res" — the county where the land is located. But *Vector* did not consider the issue of venue; it held only that when a bond discharging a lien is filed and recorded, it replaces the lien. Id. at 571-572. The lien can no longer be foreclosed upon, and an action may not be maintained against the owners of the property, because the claim against the property has been discharged by the bond. Id. See generally *Gignilliat v. West Lumber Co.*, 80 Ga. App. 652, 658 (2) (56 SE2d 841) (1949) (in the absence of contractual relationship, materialman cannot recover general verdict and judgment against owner of property on lien). *Vector* does not declare, as appellee appears to contend, that a lien foreclosure is an action "respecting title to land" and thus situated "in the county where the land lies" under Ga. Const. of 1983, Art. VI, Sec. II, Par. II, in contravention of the decisions of our Supreme Court.

An action to foreclose a condominium association's lien is therefore not an action "respecting title to land" for purposes of venue, and the trial court erred in so holding and in denying Foster's motion to dismiss or transfer for improper venue in Case No. A10A0262.

## Case No. A10A0374

In Case No. A10A0374, the trial court erred in concluding that the action is one "respecting title to land" for the reasons stated above. It additionally erred in concluding that venue over Inglesby conferred venue as to Foster under OCGA § 9-10-31 (a). That Code section refers to Ga. Const. of 1983, Art. VI, Sec. II, Par. IV, providing: "Suits against joint obligors, joint tort-feasors, joint promisors, copartners, or joint trespassers residing in different counties may be tried in either county."[4] But Foster does not fall within any of these categories. At the time this action was brought, Foster was no longer a "unit owner" but had sold both units to Inglesby. The Georgia Condominium Act declares that condominium assessments are "the personal obligation of the unit owner." OCGA § 44-3-109 (a). "Unit owner" is defined in OCGA § 44-3-71 (29) as "one or more persons, including the declarant, who own a

---

[4] The relevant provision was designated as Art. VI, Sec. XIV, Par. IV in the 1976 and 1945 Constitutions.

condominium unit." "Declarant" in its turn is defined as the owner or lessee of the property, but specifically excludes any mortgagee or lienholder. OCGA § 44-3-71 (13).

Although he had taken back a purchase money mortgage from Inglesby, Foster is not a "unit owner" but a "mortgagee." In its complaint and amended complaint, Wilmington does not allege that Foster is a joint obligor. It acknowledges that Foster conveyed the units to Inglesby, and it does not seek to recover the unpaid assessments from Foster, but seeks only to determine the "relative priorities" of the parties.[5] Foster is therefore not a joint obligor with Inglesby.

While Wilmington also appears to raise a forum non conveniens argument, that provision is only applicable where an action would be more properly heard "in a different county *of proper venue* within this state." (Emphasis supplied.) OCGA § 9-10-31.1 (a).

The trial court erred in holding that venue as to Inglesby established venue as to Foster and in denying Foster's motion to dismiss or transfer venue in Case No. A10A0374.

*Judgments reversed. Mikell and Adams, JJ., concur.*

DECIDED MAY 28, 2010.

*Kight & Harper, Sarah S. Harper,* for Foster.
David M. Small, for Wilmington Plantation Owners Association.

---

[5] Any claim against Foster for past assessments would be a claim for money damages, properly brought in the county where he resides. *Ray*, supra, 205 Ga. App. at 90 (4).